UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA

v.

MICHAEL SWIGER

Case No. 2:22-CR-038-GSL-JEM

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss Indictment [DE 126] and Supplemental Motion to Dismiss [DE 141]. Defendant argues that 18 U.S.C. § 922(g)(3) is unconstitutional based upon *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). [DE 126]. For the reasons set forth below, the Court denies Defendant's motions.

**Background**

The Government alleges that Defendant Michael Swiger engaged in several online conversations with an undercover Homeland Security agent, who posed as an adult woman interested in obtaining and using drugs. [DE 132, page 1]. Allegedly, Defendant bragged that he could acquire methamphetamine on the dark web at a discounted price and that he had been a user of methamphetamine and other drugs for several years. [*Id.* at 1–2]. Defendant also allegedly recounted previous incidences when he got high on drugs in the company of women, including a time when he pointed a loaded gun at a woman's head and another time when he raped an inebriated woman. [*Id.* at 2]. In subsequent conversations with the agent, Defendant allegedly sent a video of himself injecting what he purported to be methamphetamine and videos of child pornography. [*Id.*].

Law enforcement executed a search warrant on Defendant's home on April 5, 2022. During the search, law enforcement uncovered eight firearms, numerous syringes and other drug paraphernalia, some amount of methamphetamine, and child pornography. [*Id.* at 2–3].

On April 20, 2022, Defendant was indicted on two charges related to the distribution and possession of child pornography. [DE 10]. Subsequently, the Government filed three superseding indictments, adding charges relating to unlawful possession of a firearm and possession of methamphetamine. [DE 51]; [DE 82]; [DE 136]. At issue in the instant motion is Count 3 of the third superseding indictment: unlawful possession of a firearm as an unlawful user of a controlled substance (methamphetamine), in violation of 18 U.S.C. § 922(g)(3). [DE 141]; *see* [DE 136]. Defendant argues that this charge should be dismissed on the grounds that § 922(g)(3) is unconstitutional as applied and on its face. [DE 126]. Defendant's instant motion is based upon the Supreme Court's interpretation of the Second Amendment and framework set forth in *Bruen*. [*Id.*]. The Government argues that § 922(g)(3) is consistent with both Seventh Circuit and Supreme Court precedent. [DE 132].

## Discussion

The law for which Defendant is charged makes it "unlawful for any person who is an unlawful user of or addicted to any controlled substance" from possessing a "firearm or ammunition." § 922(g)(3). Defendant argues that the conduct proscribed by § 922(g)(3) is protected under the *plain text* of the Second Amendment because illegal drug users—like Defendant—are part of the class of people that is protected in *Heller*. [DE 126, page 3] (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008)). Further, Defendant argues that disarming illegal drug users does not fall within the scope of the *historical tradition of firearm regulation* in the United States. [*Id.* at page 3–4].

2

Pursuant to *Bruen*, courts apply a two-step framework when evaluating the constitutionality of gun regulations. 597 U.S. at 17 (holding that this approach is consistent with the Court's decision in *Heller*). First, the court determines if an individual's specific conduct is covered by the "plain text" of the Second Amendment. *Id.* If so, that conduct is presumptively protected. *Id.* Second, to justify a regulation of presumptively protected conduct, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

In the instant case, this Court finds that § 922(g)(3) is facially constitutional because firearm possession by illegal drug users is not conduct that is protected by the plain text of the Second Amendment.[1] Even if the statute fell within the scope of the Second Amendment, the government met its burden to demonstrate that disarming illegal drug users is consistent with the historical tradition of firearm regulation.

**A. § 922(g)(3) is outside the scope of the Second Amendment**

The Second Amendment states that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. While the Second Amendment provides this fundamental right, the Supreme Court has held that this right is not unlimited. *Heller*, 554 U.S. at 595; *cf. McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010) (Stevens, J., concurring in judgment) ("No fundamental right—not even the First Amendment—is absolute.").

---

[1] Defendant also raises an as-applied challenge to the constitutionality of § 922(g)(3). [DE 126, page 1]. When a court is "presented with an as-applied challenge, we examine only the facts of the case before us and not any set of hypothetical facts under which the statute might be unconstitutional." *United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011). However, Defendant has not presented any such facts in his motion, and the Court does not independently find any circumstances that would support Defendant's as-applied challenge. Therefore, Defendant's as-applied challenge fails.

3

In *Heller*, the Court struck down a ban on handgun possession in the home but was careful to narrow and qualify its ruling, as not to affect other regulations in place. 554 U.S. at 635. The Court went so far as to state that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill" and other firearms regulations that were not in front of the Court. *Id.* at 626. The Court reasoned that "there will be time enough to expound upon the historical justifications for the exceptions we have mentioned if and when those exceptions come before us." *Id.* at 635. *See New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*, 590 U.S. 336, 364 (2020) (Alito, J., dissenting) ("In *Heller* . . . . [w]e recognized that history supported the constitutionality of some laws limiting the right to possess a firearm, such as laws . . . prohibiting possession by felons and other dangerous individuals."). In *McDonald*, the Court held that the Second Amendment "is fully applicable to the States." 561 U.S. at 750. But again, the Court repeated its assurances that "our holding [does] not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill . . . .'" *Id.* at 786 (quoting *Heller*, 554 U.S. at 626). Defendant brings the instant motion under *Bruen*, and even there, several justices noted that the Court's holding did not have a broad reach. *E.g., Bruen*, 597 U.S. at 72 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm . . . . Nor have we disturbed anything that we said in *Heller* or *McDonald* . . . ."); *id.* at 81 (Kavanaugh, J., concurring) ("Nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . .") (quoting 554 U.S. at 626). Even in the Court's most recent decision on gun regulations, the "traditional exceptions" to the Second Amendment that were identified in *Heller*, such as "prohibitions on the possession of

4

firearms by felons and the mentally ill," were left untouched as "presumptively constitutional." *United States v. Rahimi*, 602 U.S. __ (2024) (Kavanaugh, J., concurring) (slip op., at 22–23).

Considering the Supreme Court's narrow rulings and hesitancy to disturb gun regulations not directly before it, this Court will look to the Seventh Circuit for guidance on the constitutionality of § 922(g)(3). In *United States v. Yancey*, the Seventh Circuit held that "Congress acted within constitutional bounds by prohibiting illegal drug users from firearm possession . . . ." 621 F.3d 681, 686 (7th Cir. 2010) (upholding the constitutionality of § 922(g)(3)). The court found that "[k]eeping guns away from habitual drug abusers is analogous to disarming felons." *Id.* at 684. The court also compared habitual drug abusers to the mentally ill, explaining that both groups "are more likely to have difficulty exercising self-control, making it dangerous for them to possess deadly firearms." *Id.* at 685. As discussed earlier, the Supreme Court continues to treat these "traditional exceptions" to the Second Amendment as presumptively constitutional. *Rahimi* (Kavanaugh, J., concurring) (slip op. at 22–23). Further, the Supreme Court has identified the similarity in need to regulate the behavior of both habitual drug abusers and the mentally ill, and the *Yancey* relied on this in-part to justify "extending the [firearm] ban to those who regularly abuse drugs. 621 F.3d at 685–686 (citing *Robinson v. California*, 370 U.S. 660, 667 (1962) and *Powell v. Texas*, 392 U.S. 514, 532 (1968)). While upholding the constitutionality of § 922(g)(3), the court noted that this firearm restriction is "far less onerous than those affecting felons and the mentally ill" because it only bars *current* drug users. *Id.* at 686–687. This is significant because the gun ban extends only so long as an individual abuses drugs. *Id.* at 687 ("In that way, Yancey himself controls his right to possess a gun; the Second Amendment, however, does not require Congress to allow him to simultaneously choose both gun possession and drug abuse.").

In a later case, the Seventh Circuit summarized the conclusion of *Yancey*: "the founders conceived of the right to bear arms as belonging only to virtuous citizens . . . ." *Kanter v. Barr*, 919 F.3d 437, 446 (7th Cir. 2019). The court in *Kanter* ultimately upheld the constitutionality of a gun restriction on other grounds, and it did not apply the "virtuous citizens" theory to exclude certain conduct from the scope of the Second Amendment. *Id.* at 447–451. However, the most recent Supreme Court guidance suggest that the virtuous citizen theory, as applied in *Yancey*, remains good law.  In *Bruen*, the Court reaffirmed case law stating that the Second Amendment "protect[s] the right of an ordinary, *law-abiding citizen* to possess a handgun . . . ." 597 U.S. at 8 (emphasis added) (citing *Heller*, 554 U.S. 570 and *McDonald*, 561 U.S. 742). The Court repeats the term "law-abiding citizen" throughout its opinion. *Id.* at 9, 15, 26, 29, 30, 31, 38, 60, 70; *see id.* (Thomas, J., dissenting) (slip op. at 4) ("When considering whether a modern regulation is consistent with historical regulations and thus overcomes the presumption against firearms restrictions, our precedents 'point toward at least two metrics [of comparison]: how and why the regulations burden a *law-abiding citizen's* right to armed self-defense.'" (emphasis added)).  The Court's emphasis on the right of "a law-abiding citizen" is undoubtedly deliberate, and it demonstrates a clear limitation of the scope of the Second Amendment with regard to "the people" protected by its plain text. *See Heller*, 554 U.S. at 645 (Stevens, J., dissenting) ("[T]he Court itself reads the Second Amendment to protect a 'subset' significantly narrower than the class of persons protected by the First and Fourth Amendments . . . the Court limits the protected class to 'law-abiding, responsible citizens' . . . . But the class of persons protected by the First and Fourth Amendments is not so limited; for even felons (*and presumably irresponsible citizens as well*) may invoke the protections of those constitutional provisions.") (emphasis omitted and added)).

With consideration to the recent Supreme Court decisions in *Bruen* and *Rahmi*, and the Seventh Circuit's earlier decision in *Yancey*, this Court holds that the plain text of the Second Amendment does not protect the right of illegal drug users to possess firearms. The *Yancey* court clearly upheld the constitutionality of § 922(g)(3) and that holding remains good law in this circuit.[2] In addition, this gun restriction is less burdensome than felon disarmament laws, which this Court (and every other court in this District) has previously upheld to be constitutional too. *United States v. Razo*, No. 2:23-CR-127, 2024 WL 3291762 (N.D. Ind. July 3, 2024) (collecting cases). Therefore, this Court finds that § 922(g)(3) is not within the scope of the Second Amendment and is facially constitutional.

### B. § 922(g)(3) is consistent with the Nation's historical tradition of firearm regulation

Having already determined that § 922(g)(3) is not covered by the plain text of the Second Amendment, this Court need not engage in a detailed search for evidence of historical analogues of the statute to determine its constitutionality. *See Rahimi*, 602 U.S. __ (2024) (Gorsuch, J., concurring) (slip op., at 1) ("In this case, no one questions that the law Mr. Rahimi challenges addresses individual conduct covered by the text of the Second Amendment . . . . [T]he question becomes whether the law . . . is consistent with historic regulations."); *id.* (Thomas, J., dissenting) (slip op., at 5) ("It is undisputed that § 922(g)(8) targets conduct encompassed by the Second Amendment's plain text"). At this point, such an inquiry would be superfluous. But even assuming that § 922(g)(3) is within the scope of the text of the Second Amendment, the Government met its burden under *Bruen* to demonstrate that the statute is consistent with "this

---

[2] The Defendant only cited circuit authority from the Fifth Circuit in *United States v. Daniels*, which is not binding on this Court. 77 F.4th 337 (5th Cir. 2023), *cert. granted, judgment vacated*, 144 S. Ct. 2707 (2024) (remanded for further consideration in light of *Rahimi*). Further, *Daniels* did not find § 922(g)(3) to be facially unconstitutional but invalid only as applied to the defendant. *Id.* at 355. This Court does not find the Fifth Circuit's reasoning to be persuasive, and moreover, it is contrary to Seventh Circuit precedent. *See Yancey*, 621 F.3d 681.

Nation's historical tradition of firearm regulation." 592 U.S. at 17. Therefore, even assuming the alternative, § 922(g)(3) is constitutional.

The Government's brief provides a convincing basis that § 922(g)(3) "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." [DE 132, page 9] (quoting *Bruen*, 597 U.S. at 19). The Government argues in detail that § 922(g)(3)—a statute that disarms drug users—is analogous to historical laws that disarmed (a) groups who presented a risk of danger, (b) intoxicated individuals, and (c) the mentally ill. [*Id.* at 10]. For the sake of brevity, this Court points to *Yancey*'s historical analysis, which evaluated similar historical regulations as those set forth by the Government. 621 F.3d 681 (7th Cir. 2010). *Yancey*'s historical analysis showed that these "regulations have long existed without question to their constitutionality."[3] *United States v. Posey*, 655 F. Supp. 3d 762, 773 (N.D. Ind. 2023). This Court agrees and finds that the Government's proposed historical laws are sufficient analogues to § 922(g)(3). *See Rahimi*, 602 U.S. __ (2024) (slip op., at 7) ("[W]hen a challenged regulation does not precisely match its historical precursors, 'it still may be analogous enough to pass constitutional muster . . . . [I]t need not be a 'dead ringer' or a 'historical twin.'") (internal citation omitted). Therefore, this Court holds that the restrictions imposed by § 922(g)(3) are consistent with the historical tradition of firearm regulation, and the Government has satisfied its burden under the second prong of *Bruen*.

---

[3] Even though *Yancey* utilized the pre-Bruen test for Second Amendment claims, its historical analysis was "at the first step of the old test [which] was recognized as 'broadly consistent with *Heller*' and remains valid." *Posey*, 655 F. Supp at 773. Moreover, several sister courts have relied on the historical analysis in *Yancey* to reject *Bruen* challenges to § 922(g)(3). *Id.* (collecting cases).

## CONCLUSION

This Court finds that § 922(g)(3) is facially and as-applied constitutional because firearm possession by illegal drug users is not conduct that is covered by the plain text of the Second Amendment. Even if the statute fell within the scope of the Second Amendment, the Government met its burden to demonstrate that disarming illegal drug users is consistent with the historical tradition of firearm regulation. For these reasons, Defendant's Motion to Dismiss Indictment [DE 126] and Supplemental Motion to Dismiss [DE 141] are DENIED.

SO ORDERED.

ENTERED: November 1, 2024

/s/ GRETCHEN S. LUND
Judge
United States District Court

9